# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MICHAEL HASHER, | : | Civil No. 08-4105 (CCC) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GEORGE W. HAYMAN, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

MICHAEL HASHER, #348
Special Treatment Unit
CN 905
Avenel, NJ  07001
Plaintiff Pro Se

DANIEL MICHAEL VANNELLA
Office of New Jersey Attorney General
P.O. Box 112
Trenton, NJ  08625
Attorney for Defendants George Hayman and Bernard Goodwin

COLLEEN L. BRANDT
Marks, O'Neill, O'Brien & Courtney, P.C.
6981 N. Park Drive
Pennsauken, NJ  08109
Attorney for Defendants Correctional Medical Services, Gabriel, and Smyczek

**CECCHI, District Judge**.

In this case, Plaintiff Michael Hasher claims that Defendants George Hayman, Bernard

Goodwin, Correctional Medical Services, Dr. Ahab Gabriel and Dr. Herbert Smyczek

(collectively, "Defendants") violated his civil rights contrary to 42 U.S.C. § 1983 by delaying for

more than one year in diagnosing and treating him for melanoma.  Before the Court are

Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).

This Court has reviewed the pleadings, deposition transcripts, and the parties' written

submissions.  This matter is decided without oral argument pursuant to Fed. R. Civ. P. 78.

Because Defendants applied the incorrect legal standard to Hasher's claims, and for the reasons

set forth below, this Court will deny the summary judgment motions.  However, as required by

28 U.S.C. § 1915(e)(2)(B)(ii), this Court will dismiss Plaintiff's claims under 42 U.S.C. § 1983

against Defendants George Hayman and Bernard Goodwin for failure to state a claim upon which

relief may be granted.

## I.  BACKGROUND

The following facts are taken from Plaintiff's Complaint and the documents attached

thereto.[1]  Plaintiff Michael Hasher has been civilly committed to the Special Treatment Unit by

the State of New Jersey as a sexually violent predator since 2004.  Hasher asserts that, on

numerous occasions since February 2007, he was treated by Dr. Gabriel and other medical

personnel employed by Correctional Medical Services ("CMS") for a variety of chronic

conditions.  During the course of those treatments,  Hasher alleges that he expressed concern

about tumor(s) on his face and head.[2]  Hasher also states that he complained to CMS personnel of

dizziness, hearing difficulty, blurry vision, and weakness.  According to Hasher, he received no

treatment for the tumor(s) on his face until April 7, 2008, when he saw Dr. Manhong, a

---

[1] In addition to the Complaint, Hasher submitted an application for a TRO, application for appointment of pro bono counsel, affidavit in support of TRO, and 40 pages of exhibits.  (ECF No. 1.)  Hasher has not filed an amended complaint.

[2] CMS, a private company contracting with the State of New Jersey, provided medical care to civilly committed persons at the Special Treatment Unit until October 1, 2008.  CMS employed Doctors Gabriel and Smyczek.

dermatologist outside the facility.  At that time, Dr. Manhong diagnosed the tumor(s) on sight as two areas of melanoma on his left temple.  A pathology report from the biopsy performed by Dr. Manhong, dated April 29, 2008, confirmed the diagnosis of level 2 melanoma, with depth of invasion of at least 0.5 mm, on the left temple superior and left temple inferior.  (ECF No. 1-6 at p. 23-24.)  Thereafter, Dr. Smyczek, the Medical Director at the facility, authorized Dr. Gabriel's request for a referral to an ear, nose and throat ("ENT") specialist, and on May 20, 2008, Dr. Sadeq Razvi, an ENT specialist outside the facility, examined Hasher and recommended surgery with a wide excision by a plastic surgeon.  On July 7, 2008, Dr. Shar, a surgeon at St. Francis Hospital, performed the required surgery.  According to Hasher, Dr. Shar opined that Hasher's history of dizziness and ear problems could be a result of metastasis to the brain and recommended an MRI and CAT scan.  Hasher states that, for each outside appointment, New Jersey Department of Corrections ("NJDOC") officials transported him to and from the facility in leg and wrist shackles.  (ECF No. 1-6 at 18.)

On or about August 13, 2008, Hasher filed the Complaint in this case, together with an application to proceed in forma pauperis, application for appointment of counsel, motion for a temporary restraining order, brief, supporting affidavit, and 40 pages of exhibits.  He sought a temporary restraining order or preliminary injunction ordering Defendants to cease delaying necessary diagnostic testing and treatment for melanoma, dizziness, and ear problems.  By Order filed September 8, 2008, Judge Sheridan granted the application to proceed in forma pauperis and ordered service on an expedited basis, in light of the nature of the medical claim raised in the Complaint and Plaintiff's submissions.  (ECF No. 2.)  By Order filed October 22, 2008, Judge

3

Sheridan denied Hasher's motion for temporary relief as moot and ordered the state defendants to answer or otherwise plead by November 5, 2008.  (ECF No. 12.)

Several defendants were thereafter dismissed from the action, but the following remain:  Dr. Gabriel, Dr. Smyczek, CMS ("the CMS Defendants"), and George Hayman, former Commissioner of the NJDOC, and Bernard Goodwin, former administrator of the Special Treatment Unit ("NJDOC Defendants").  The CMS Defendants filed an Answer on September 25, 2008 (ECF No. 7), and the NJDOC Defendants filed an Answer on July 18, 2012 (ECF No. 117).  Presently before this Court are a motion for summary judgment in favor of the CMS Defendants (ECF No. 85) and a motion for summary judgment in favor of the NJDOC Defendants (ECF No. 113.)  Hasher has filed several affidavits and other documents opposing these motions.  (ECF Nos. 75, 76, 87, 89, 123.)

## II.  DISCUSSION

A.  Summary Judgment Standard

Substantively, Rule 56(a), provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 also has procedural requirements. First, the moving party must "identify[]each claim or defense - or the part of each claim or defense - on which summary judgment is sought."  Second, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B). Finally, the Court "may consider other materials in the record," Fed. R. Civ. P. 56(c)(3), and "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[W]hen determining whether the moving party has proven the absence of a genuine material issue of fact, the facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true, and the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Aman v. Cort Furniture Rental Corp., 85 F. 3d 1074, 1080-81 (3d Cir. 1996) (citations and internal quotation marks omitted).

A defendant moving for summary judgment may carry its initial burden in two ways: (1) producing evidence that negates an essential element of plaintiff's case, see Fed. R. Civ. P. 56(c)(1)(A); or (2) pointing out by relying on discovery that the plaintiff has no evidence to prove

his or her case, "a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006).[3]

In this case, this Court can conclude that defendants carried their burden of production only if they have either produced evidence negating an essential element of Hasher's § 1983 claim or demonstrated that the evidence in Hasher's deposition or otherwise in the record is insufficient as a matter of law. See Farid v. Smith, 850 F.2d 917, 924 (2d Cir. 1988). If Defendants make this burden in either manner, then the burden shifts to Hasher to point to evidence creating a genuine issue of material fact.[4]

B. Summary Judgment Motion of CMS Defendants

Hasher has been civilly committed by New Jersey since 2004. This case concerns Hasher's allegations that Defendants delayed in diagnosing and treating melanoma on his face for

_____

[3] See also Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-330 (3d Cir. 1995) ("When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. . . . Thereafter, the nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial").

[4] See Celotex, 477 U.S. at 330 n.2 ("any doubt as to the existence of a genuine issue for trial should be resolved against the moving party"); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (to survive summary judgment, non-movant must only show more than "some metaphysical doubt as to the material facts"); Hamilton v. Leavy, 117 F.3d 742, 748 (3d Cir. 1997) (reversing summary judgment in favor of prison officials who stated in affidavits that they "did everything they could" to protect prisoner when they recommended he be placed in protective custody because prisoner's assertion in his pro se complaint that they could have taken additional steps, such as place him in administrative segregation, creates a genuine issue of material fact regarding whether their response was reasonable); Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("if the opponent has exceeded the 'mere scintilla' threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent"), cert. denied, 507 U.S. 912 (1993).

over one year, such that the melanoma eventually grew to the size of a quarter and required a wide excision by a plastic surgeon.  During this period, CMS was the contract provider for the State of New Jersey at the Special Treatment Unit, where Hasher was confined, and Doctors Gabriel and Smyczek were employed by CMS.  The crux of Hasher's claim is that, despite his treatment by Dr. Gabriel (as a chronic care patient) on numerous occasions between February 2007 and April 2008, and although he pointed out a black growth that appeared on his left temple to Dr. Gabriel (who was supervised by Dr. Smyczek)  in February 2007, the CMS Defendants essentially ignored the growing dark tumor(s) on his face.  As a result, the tumor(s) remained undiagnosed until April 2008, when Hasher was sent to an outside dermatologist, who immediately diagnosed the tumor(s) as melanoma.

The arguments of the CMS Defendants (Dr. Gabriel, Dr. Smyczek and CMS) in their brief supporting their summary judgment motion are one and the same, with the exception that CMS makes the tenuous argument that it is not a "person" subject to suit under 42 U.S.C. § 1983.[5]  In their combined brief, relying on <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976) and other Eighth Amendment case law, the CMS Defendants maintain that "Plaintiff has no cause of action against CMS, Dr. Gabriel or Dr. Smyczek because neither they nor any other CMS personnel were deliberately indifferent to Plaintiff's medical needs."  (ECF No. 85-4 at 9.)  They further argue that "Plaintiff's claims against CMS, Dr. Smyczek and Dr. Gabriel must be dismissed for the timeframe up to and including October 1, 2008, because no jury could find that their actions constituted deliberate indifference."  (ECF No. 85-4 at 10-11.)  This argument, however, is

_____

[5] It has been clear at least since 2003 that a corporate entity providing medical care to inmates or other persons detained by the state can be found liable as a "person" under § 1983. <u>See</u> <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003).

misplaced because Hasher is *not* a convicted prisoner, but rather is a civilly committed individual. As such, the deliberate indifference standard for inadequate medical care under the Due Process Clause relied on by the CMS Defendants is inapplicable to Hasher's claims. Because the CMS Defendants employ the incorrect legal standard, they have not carried their burden of showing that they are entitled to judgment as a matter of law under Rule 56(a).

The Due Process Clause provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. 14. "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf - through incarceration, institutionalization, or other similar restraint of personal liberty - which is the 'deprivation of liberty' triggering the protections of the Due Process Clause." DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 200  (1989). "[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety - it transgresses the substantive limits on state action set by the . . . Due Process Clause." Id.

In Youngberg v. Romeo, 457 U.S. 307, 314-25 (1982), the Supreme Court held that "the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their 'reasonable safety.'" DeShaney, 489 U.S. at 199.  In Youngberg, Nicholas Romeo, an involuntarily committed mental patient, sued various state officials for violating his constitutionally protected liberty interest in safe conditions of confinement, freedom from bodily restraint, and training or rehabilitation.  The district court instructed the jury that they could find

that Romeo's constitutional rights had been violated only if they found that defendants were deliberately indifferent to Romeo's medical and psychological needs.  Youngberg, 457 U.S. at 312.  The jury returned a verdict for defendants.  Id.  Romeo appealed and the Third Circuit, sitting en banc, reversed and remanded, but did not agree on the standard to be used to determine if Romeo's constitutional rights had been violated.  Id. at 313.

The Supreme Court later granted certiorari.  In considering the standard of care owed to civilly committed persons, the Supreme Court noted that "the State concedes a duty to provide adequate food, shelter, clothing, and medical care.  These are the essentials of the care that the State must provide.  The State also has the unquestioned duty to provide reasonable safety for all residents."  Youngberg, 457 U.S. at 324.  The Supreme Court held that the jury was "erroneously instructed on the assumption that the proper standard of liability was that of the Eighth Amendment."  Id. at 325.  Further, the Supreme Court determined that the following standard reflects the proper balance between the legitimate interests of the State and the rights of the involuntarily committed:

> [T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised.  It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made.  Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.
>
>    *      *      *
>
> In determining what is "reasonable" . . . courts must show deference to the judgment exercised by a qualified professional . . . .  [T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

Youngberg, 457 U.S. at 321-22, 323 (citations, footnotes and internal quotation marks omitted).

The Third Circuit has confirmed that Youngberg governs medical claims by civilly committed mental patients like Hasher.  See Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987) (To apply the Eighth Amendment standard to mentally [ill] persons would be little short of barbarous"); Manasco v. Rogers, 337 Fed. App'x 145, 150 (3d Cir. 2009) (New Jersey civilly committed sexually violent predator's right to adequate medical care was clearly established by Youngberg v. Romeo).  For example, in Shaw v. Strackhouse, 920 F.2d 1135 (3d Cir. 1990), the Third Circuit held that the district court had erred in applying the deliberate indifference standard to grant summary judgment on a failure to protect claim brought by a resident of a state mental institution against professionals.[6]  Significantly, the Third Circuit clarified the distinction between negligence and Youngberg's professional judgment standard as follows:

> [D]efendants' attempt to equate professional judgment and negligence falls short of the mark.  Professional judgment is a relatively deferential standard.  It requires only that a state actor exercise professional judgment in choosing the appropriate course of action.  Negligence, however, imposes on a state official the burden of choosing, from among alternatives, a course of action consistent with the exercise of "due care."  That means, as we see it, rejecting negligent alternatives that might nonetheless satisfy the demands of professional judgment.
>
> Admittedly, the two standards are premised on different criteria.  Thus, any attempt to place the two on a single continuum risks becoming, in the vernacular, a comparison of "apples and oranges."  This dissimilarity notwithstanding, professional judgment appears to us to be a substantially less onerous standard than negligence from the viewpoint of the public actor.  Indeed, in our view, professional judgment more closely approximates - although, as we have

---

[6] The Youngberg Court defined "professional" as "a person competent, whether by education, training or experience, to make the particular decision at issue."  Youngberg. 457 U.S. at 323 n.30.  In this case, the CMS Defendants are professionals.  "Nonprofessional employees who provide care for involuntarily institutionalized mentally retarded individuals are subject even after Youngberg, only to a deliberate indifference standard."  Shaw v. Strackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990).

> discussed, remains somewhat less deferential than - a recklessness or gross
> negligence standard.  Professional judgment, like recklessness and gross
> negligence, generally falls somewhere between simple negligence and intentional
> misconduct.

Shaw, 920 F.2d at 1146.

The Third Circuit has also applied Youngberg's professional judgment standard  (rather than deliberate indifference) to the medical claim of a civilly committed sexually violent predator ("SVP"), like Hasher, in Deavers v. Santiago, 243 Fed. App'x 719, 722 (3d Cir. 2007).  Likewise, several courts in this district have also employed Youngberg to evaluate medical claims brought by civilly committed SVPs in New Jersey.  See Alves v. Main, No. 01-789 (DMC) 2012 WL 6043272, at *11 (D.N.J. Dec. 4, 2012) (approving the settlement of a class action by civilly committed SVPs which had been litigated for 10 years (where the SVPs were represented by Seton Hall Law School) and determining that the appropriate legal standard for medical claims brought by civilly committed SVPs is Youngberg); Gosciak v. Main, No. 10-5822 (SDW), 2011 WL 2491348, at *5-6 (D.N.J. June 21, 2011) (same).

To succeed on their summary judgment motion, the CMS Defendants must establish that there are no factual disputes and that they are entitled to judgment as a matter of law under Youngberg's professional judgment standard.  In other words, the CMS Defendants must show that there is no genuine issue of material fact that their conduct with respect to Hasher's tumor(s) did not amount to recklessness or gross negligence.  See Shaw 920 F.2d at 1145; Scott v. Plante, 691 F.2d 634, 637 (3d Cir. 1982); Wood v. Main, Civ. No. 05-1448 (RMB), 2008 WL 3833584 at *4 (D.N.J. Aug. 13, 2008).  However, the CMS Defendants do not rely on Youngberg's professional judgment standard, but rather argue that summary judgment is warranted because they were not deliberately indifferent to Hasher's serious medical needs.  (ECF No. 85-4 at 9-11.)

The summary judgment motion of the CMS Defendants, which is predicated on the absence of deliberate indifference, necessarily fails to satisfy their burden of showing that there is no genuine issue of material fact as to whether they exercised reasonable professional judgment under the Youngberg standard in failing to obtain a diagnostic biopsy for Hasher's undiagnosed melanoma prior to April 7, 2008.

The Eighth Amendment standard of deliberate indifference to serious medical needs requires a showing that the CMS Defendants were actually aware of Hasher's serious medical need for a biopsy prior to April 7, 2008, and failed to reasonably respond to that knowledge.[7]  In contrast, the professional judgment standard only requires that the CMS Defendants acted with gross negligence in failing to order an earlier biopsy.  See Shaw, 920 F.2d at 1146 ("Professional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct.").  This Court must deny the CMS Defendants' motion because they have not shown that there is no genuine dispute as to any material fact regarding whether they satisfied Youngberg's professional judgment standard.  Fed. R. Civ. P. 56(a).

Summary judgment is not warranted because the evidence in this record shows the existence of factual disputes, i.e., when did the CMS Defendants know about the tumor(s) on Hasher's face and how did they respond to this knowledge?  The CMS Defendants rely on the electronic medical records and Hasher's written requests for medical assistance to show that there is no evidence that they were aware of the need to biopsy the black tumor(s) on Hasher's face

---

[7] See, e.g., Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

prior to March 10, 2008, when Dr. Gabriel observed "3 adjacent dark moles in the left forehead that were noticed a few weeks ago and started as on[e] mole then became 3" (ECF No. 85-8 at p. 58), in response to Hasher's sick call request dated March 5, 2008, for a "growth on face" (ECF No. 1-6 at p. 36). To be sure, the electronic medical records do not include a reference to the black tumor(s) on Hasher's face prior to Dr. Gabriel's notation dated March 10, 2008. However, the CMS Defendants - not Hasher - wrote the notes in Hasher's medical records and this Court is required to view the evidence in the record in favor of Hasher. Moreover, evidence exists in the record that Hasher showed the dark tumor(s) on his face to Dr. Gabriel as early as February 2007. (ECF No. 85-8 at pp. 1, 2.) For example, Hasher testified in his deposition that he filled out a medical request on February 15, 2007, because he was concerned about a "black dot" with a diameter of 1/8 inch on his left temple that "wasn't going away," after he had noticed it a few months earlier, and that he pointed out this black tumor to Dr. Gabriel during two visits in February 2007. (ECF No. 113-5 at p. 8-11.) Hasher further testified that, on his first visit with Dr. Gabriel concerning the tumor in early February 2007, Hasher asked Dr. Gabriel what the black dot was because it wasn't going away, and Dr. Gabriel said "Don't worry about it." (ECF No. 113-5 at 10.) Hasher also testified that when he expressed his concern again to Dr. Gabriel in early March 2007, Dr. Gabriel "told me that cutting it out will leave a worse scar than what you got." (ECF No. 113-5 at p. 11.) In addition, Hasher testified that Dr. Gabriel examined him on many visits between March 2007 and March 2008, as Hasher was a chronic care patient and submitted medical request slips for dizziness, fevers, ear problems, and other illnesses during this period.[8] (ECF No. 113-5 at pp. 10-14.)

---

[8] The electronic medical records confirm that Dr. Gabriel "physically examined" Hasher on 13 different occasions between February 16, 2007, and March 10, 2008, i.e., February 16,

Further, the notes of the outside dermatologist, Dr. Manhong, documenting his April 7, 2008 examination of Hasher, specify that Dr. Manhong saw Hasher for a "growth to l[ef]t temple p[atien]t has had 1 yr. P[atien]t sts not painful. P[atien]t hasn't had any tx from facility."  (ECF No. 1-6 at p. 28.)  This note records Dr. Manhong's observation of left "temple superior w/dark irreg brown patch 0.9 CM" and left "temple inferior w/dark irreg pigmented macule 0.3 CM."  Id. The record also includes many (pre-litigation) letters Hasher wrote to Joan Van Pelt of the Office of the Public Advocate; Dr. Smyczek; Catherine O'Donnell, Ombudsman for CMS; and George Hayman, wherein Hasher complained about the delay from February 2007 to April 2008 in ordering a biopsy and providing treatment for the dark tumor(s) on his face, which turned out to be melanoma.  (ECF No. 1-6 at 1-16.)

Significantly, in his affidavit, Dr. Gabriel does not deny Hasher's testimony that Dr. Gabriel saw and knew about the dark tumor(s) on Hasher's face before March 2008.  Rather, he avoids that issue and avers as follows:

> 5.  I saw Mr. Hasher on February 16, 2007.  He was complaining of a lesion located on his occipit (the rear of the skull).
>
> 6.  I examined Mr. Hasher, and found a small wart, approximately 1cm by 1cm. This wart was in no way cancerous or malignant.
>
> 7.  I prescribed Trichloroacetic Acid for Mr. Hasher to apply weekly for seven weeks.
>
> 8.  After February 16, 2007, Mr. Hasher did not again complain of the occipital wart.
>
> 9.  On March 10, 2008, Mr. Hasher presented with three adjacent dark moles on his left forehead that he claimed to have noticed several weeks ago.  According to

---

2007, February 20, 2007, May 21, 2007, June 18, 2007, July 9, 2007, July 23, 2007, September 10, 2007, October 10, 2007, December 24, 2007, January 9, 2008, February 6, 2008, February 11, 2008, and March 10, 2008.  (ECF No. 85-8 at pp. 5, 7, 10, 22, 25, 29, 41, 47, 54, 58.)

Mr. Hasher, these moles started as one, and then became three.  There was some light brown pigmentation in between the moles.

10.  In response, I ordered a dermatology consult for Mr. Hasher.

11.  Mr. Hasher underwent the dermatology consult on April 9, 2008 [sic].  We received the consultation report on May 6, 2008, which indicated Mr. Hasher had a malignant melanoma.

12.  The next day I called Mr. Hasher to the medical department, and informed him of the diagnosis and the risk including possible spread.  It was my determination that he would need to be seen immediately by an ENT and an oncologist.

13.  I then saw Mr. Hasher on May 12, 2008 to discuss his need to see dermatology again for a follow up.  After reading the consultation report from oncology, based on the recommendations of Dr. Mughal [sic], and my own knowledge, experience, and training, it was determined that a wider excision was necessary.  As such, I made a recommendation that Mr. Hasher see a plastic surgeon.

(ECF No. 85-9 at 1-2.)

Construing the evidence in the record in the light most favorable to Hasher, this Court finds that there are genuine factual disputes concerning when Drs. Gabriel and Smyczek became aware of one or more dark tumors on Hasher's face and the nature of their response to this knowledge (if any) prior to March 10, 2008.  This Court also finds that there is evidence in the record from which a jury *could* find that: (1) Dr. Gabriel knew of the black growth on Hasher's face as early as February 2007; (2) Dr. Gabriel saw the black growth as it increased in size and multiplied into three on as many as 13 occasions between February 2007 and March 2008; and (3) the failure to order a diagnostic biopsy prior to March 10, 2008, constituted reckless disregard or gross negligence concerning Hasher's health and medical need to biopsy the tumor(s), contrary to Youngberg's professional judgment standard.[9]  While the CMS Defendants may ultimately

_____

[9] Even if the appropriate standard is deliberate indifference, there is sufficient evidence for a jury to find that Dr. Gabriel was aware of a substantial risk to Hasher's health as early as

prevail at trial, "[i]n considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed[,] and all justifiable inferences are to be drawn in his favor." Montone v. City of Jersey City, ___ F.3d ___, 2013 WL 856359 (3d Cir. Mar. 8, 2013) (citations and internal quotation marks omitted). Hasher is entitled to have a jury decide whether the CMS Defendants exercised professional judgment or were grossly negligent in failing to send Hasher for a diagnostic biopsy prior to March 2008. See Manasco v. Rogers, 337 Fed. App'x 145, (3d Cir. 2009) (finding that factual disputes precluded summary judgment on whether administrators violated the duty they owed a sexually violent predator under Youngberg where he presented evidence that defendants were aware of his clinical history).

Finally, this Court rejects the contention of Drs. Gabriel and Smyczek that they are entitled to summary judgment on the ground of qualified immunity. (ECF No. 85-4 at 16-18.)

---

February 2007 and that Dr. Gabriel was deliberately indifferent to Hasher's medical need for further diagnosis (through a biopsy) for the dark growths on his face prior to March 2008. See Farmer v. Brennan, 511 U.S. 825, 842, 843 n.8 (1994) ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . , and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious [and w]hile the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him . . , he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.") (citations omitted); Ortiz .v Webster, 655 F.3d 731, 735 (7th Cir. 2011) ("Physicians cannot escape liability simply by 'refusing to verify underlying facts' regarding the potential need for treatment;" "Because the evidence would permit a jury to conclude that Dr. Webster's inaction substantially and unreasonably delayed necessary [surgery for death row inmate], Ortiz has done enough to survive summary judgment on his claim of deliberate indifference.") (citing Farmer, 511 U.S. at 843 n.8); McElligott v. Foley, 182 F.3d 1248, 1256-57 (11th Cir. 1999) (although prison doctor's failure to diagnose colon cancer of inmate was only extremely negligent, district court's grant of summary judgment was in error "because there was sufficient evidence to permit a jury to conclude that Dr. Foley and nurse Wagner were deliberately indifferent to [prisoner's] medical need for further diagnosis of and treatment for" abdominal pain).

First, the CMS Defendants assume, but fail to establish, that they enjoy qualified immunity from suit under § 1983.[10]  See Richardson v. McKnight, 521 U.S. 399, 412 (1997) (because private contractors carried on prison management activities in the 19th century and the "organizational structure [of a private prison management company] is one subject to the ordinary competitive pressures that normally help private firms adjust their behavior in response to the incentives that tort suits provide," private prison guards do not enjoy qualified immunity from suit in a § 1983 case); McCullum v. Tepe, 693 F.3d 696 (6th Cir. 2012) (holding that even after Filarsky v. Delia, 132 S.Ct. 1657 (2012), private psychiatrist providing services to inmates as employee of Community Behavioral Health, a private entity, was not entitled to a qualified immunity defense). Second, and more importantly, even if Drs. Gabriel and Smyczek are entitled to assert a qualified immunity defense, a civilly committed person's right to adequate medical care under the professional judgment standard was clearly established in 1982 by Youngberg.  See Manasco, 337 Fed. App'x at 150 (New Jersey civilly committed sexually violent predator's right to adequate medical care was clearly established by Youngberg v. Romeo).  Under these circumstances, Drs. Gabriel and Smyczek are not entitled to summary judgment based on qualified immunity.

C.  Summary Judgment Motion of Defendants Hayman and Goodwin

Defendants George Hayman and Bernard Goodwin also filed a motion for summary judgment.  In support of their motion, Defendants Hayman and Goodwin first argue that they are entitled to summary judgment because they were not deliberately indifferent to Hasher's serious medical needs under Estelle v. Gamble, 429 U.S. 97 (1976), and Spruill v. Gillis, 372 F.3d 218,

_____

[10] Defendants do not dispute that a physician who provides medical services to persons in state custody acts under color of state law for purposes of § 1983.  See West v. Atkins, 487 U.S. 42, 54 (1988).

236 (3d Cir. 2004).  (ECF No. 114 at pp. 20-27.)  Like the CMS Defendants, Hayman and

Goodwin rely on the inapplicable Eighth Amendment standard and argue that the evidence in the

record shows that Hasher's melanoma and tinnitus were not ignored by the CMS Defendants after

he was diagnosed with melanoma in April 2008:  "With no demonstrative deliberate indifference

by the treating medical staff, nor any persuasive evidence demonstrating any lapse in the quality

or timing of his medical treatment, plaintiff clearly cannot establish a claim of deliberate

indifference against either defendant Goodwin, the non-medical facility administrator, nor

defendant Hayman, the non-medical state-wide corrections commissioner."  (ECF No. 114 at 25.)

     Next, with respect to Hasher's allegation that NJDOC officials used unnecessary and

excessive physical restraints when transporting him to and from medical appointments, including

surgery, in leg and wrist shackles (ECF No. 1-6 at 18), Hayman and Goodwin argue - without

providing supporting affidavits - that "plaintiff has provided no evidence to substantiate the

allegation, much less demonstrate how Defendants Hayman or Goodwin were personally

involved in such decision-making."  (ECF No. 114 at 26.)

     Finally, Defendants Hayman and Goodwin argue that they are entitled to qualified

immunity.  Defendants do not maintain that the rights asserted by Hasher are not clearly

established.  Rather, they argue:

> Plaintiff, in his complaint, fails to assert both some articulable right or rights of
> which a reasonable person would have been aware, and that Hayman and/or
> Goodwin violated such right(s).  Indeed, plaintiff's allegations against Goodwin
> are merely conclusory:  not once in his complaint does plaintiff articulate any
> specific action taken by Goodwin.  Plaintiff's "allegations" against Hayman are
> even more barren: his only reference to Hayman is his writing Hayman's name in
> the caption on the first page.
>
> Plaintiff not only has failed to articulate any violations of his rights by Hayman or
> Goodwin, but he has also failed to subsequently demonstrate any violations with
> admissible evidence.  Plaintiff, save his own self-serving, speculative,

> opinionated, argumentative, and inadmissible or unpersuasive declarations, can produce no evidence that demonstrates <u>both</u> that any of his rights were violated, <u>and</u> that Hayman and/or Goodwin were <u>personally</u> involved in the violation.

(ECF No. 114 at p. 29) (citation omitted).

This Court will deny the summary judgment motion of Hayman and Goodwin on the merits because they have not shown that they are entitled to judgment as a matter of law on Hasher's due process claims.  In addition, his Court will deny the motion for summary judgment on the ground of qualified immunity because Hasher's right to medical care was clearly established by <u>Youngberg</u>.  See <u>Manasco</u>, 337 Fed. App'x at 150 (New Jersey civilly committed sexually violent predator's right to adequate medical care was clearly established by <u>Youngberg v. Romeo</u>).

D.  Section 1915(e)(2)(B) Screening

Although the Court denies the summary judgment motion of Defendants Hayman and Goodwin, the Court's inquiry is not at an end.  Because Hasher is proceeding <u>in forma pauperis</u>, 28 U.S.C. § 1915(e)(2)(B) requires this Court to "dismiss the case at any time if the court determines that" the action fails to state a claim on which relief may be granted.  This Court will dismiss the claims under 42 U.S.C. § 1983 against Defendants Hayman and Goodwin, as Hasher does not allege that these administrative defendants were personally involved in violating his constitutional rights or promulgated a policy that caused violation of his rights.[11]

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial

---

[11] Clearly, to the extent that Hasher sues Hayman and Goodwin in their official capacities, the § 1983 official capacity claims are dismissed under the doctrine of sovereign immunity.  <u>See</u> <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989); <u>Baraka v. McGreevey</u>, 481 F.3d 187, 210 (3d Cir. 2007).

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted). "[A] complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir.2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 & n. 3 (2007)). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). "On the contrary, a court is not required to accept legal conclusions alleged in the complaint. The pleading must contain sufficient factual allegations so as to state a facially plausible claim for relief." <u>Mayer v. Belichick</u>, 605 F.3d 223, 229-230 (3d Cir. 2010) (citations omitted).

This Court has examined Hasher's Complaint, the documents submitted with the Complaint, and Hasher's opposition to these Defendants' summary judgment motion. In his Complaint, Hasher asserts that Bernard Goodwin, the Administrator of the Special Treatment Unit, "is currently responsible for the operation, supervision of staff and the welfare of all residents and inmates . . . . He is responsible for and participated in the deprivations imposed upon Plaintiff by any actor, agent of the State, Contractor or subcontractor of services to DOC." (ECF No. 1 at 3.) Hasher asserts generally that "Defendants have been and are responsible for the conditions under which Mr. Hasher has been presently confined" and that "[t]he policies and procedures governing the operations of the STU and the conditions of confinement are inadequate, nonexistent, and in many instances, are excessively restrictive." (ECF No. 1 at 5.) Without factual support, Hasher concludes that Goodwin was "aware that Plaintiff's physical health was exacerbated by delaying his treatment" and "aware that CMS's medical process failed

to timely provide Mr. Hasher medical surgery, following his referrals from medical doctors months in advance." (ECF No. 1 at 6.)  Finally, Hasher asserts:

> For Mr. Hasher to visit the medical providers outside of the Special Treatment Unit, the institution in which STU is located, Defendants release him to DOC Correctional Officers for transportation.  Before Mr. Hasher is transported, he is restrained with ankle and wrist chains, in spite of his continuous pain due to his deteriorating spreading cancer and se[vere] tinnitus and dizziness.  Such measures are unrelated to any legitimate security concerns and are excessive and inappropriate and less restrictive alternatives are available.

(ECF No. 1 at 6.)

Attached to the Complaint is a letter, dated May 28, 2008, which is addressed to the New Jersey Public Advocate and copied to George Hayman and several other persons.  (ECF No. 1-6 at 8-10.)  In this letter, Hasher outlines events from February 2007 through May 2008 with respect to his melanoma and other medical issues.  Hasher asks the Public Advocate's Office to assist him in scheduling surgery on an expedited basis.

This Court has also examined Hasher's opposition to the summary judgment motion filed by Hayman and Goodwin.  (ECF No. 92.)  In his brief, Hasher argues that Hayman and Goodwin should remain as defendants because he "had contacted the Department of Corrections seeking their help getting to a hospital, due to the fact that Dr. Gabriel (CMS) was not sending him out for treatment.  Both defendants work for the Department of Corrections and oversee operation of both Department of Corrections and (CMS) Correctional Medical Services, and failed to do so." (ECF No. 92 at 1-2.)

Hasher does not allege any examples of any conduct - unconstitutional or otherwise - by Defendants Hayman and Goodwin.  Although "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence[, a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate

particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Allegations that an administrator had responsibility for supervising the other defendants or enforcing rules are insufficient to state a claim under § 1983. See Aruanno v. Main, 467 Fed. App'x 134, 138 (3d Cir. 2012); Rode, 845 F.2d at 1208. Hasher does not allege facts showing that Hayman or Goodwin participated in his diagnosis and treatment for melanoma from February 2007 through March 2008, directed others in that care, or even knew of it. Because Hasher has not alleged in his Complaint (or otherwise) that Defendants Hayman and Goodwin were personally involved in any wrongdoing, this Court is constrained to dismiss the § 1983 claims against them for failure to state a claim upon which relief may be granted.

### III.  CONCLUSION

Based on the foregoing, this Court denies Defendants' motions for summary judgment and dismisses the Complaint as against Defendants Hayman and Goodwin.

                                    _____
                                    **CLAIRE C. CECCHI, U.S.D.J.**

Dated: March 27, 2013

22